IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMAL BACA,

    **Plaintiff,**

v.                                                                            No. CIV-16-228 LAM

**NANCY A. BERRYHILL, Acting Commissioner**
**of the Social Security Administration,**

    **Defendant.**

# **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum* (*Doc. 17*) filed October 26, 2016 (hereinafter "motion"). On January 25, 2017, Defendant filed a response (*Doc. 21*) to Plaintiff's motion and, on February 21, 2017, Plaintiff filed a reply (*Doc. 24*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to have the undersigned United States Magistrate Judge conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 6* and *8*]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 12*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED**, in part, and **DENIED**, in part, and the Commissioner's decision in this case should be **REMANDED** for further proceedings in accordance with this decision.

.

## I. Procedural History

On July 12, 2012, Plaintiff protectively filed an application for Supplemental Security Income (hereinafter "SSI"). [*Doc. 12-9* at 16-17]. Plaintiff's application was denied at the initial level on October 26, 2012 (*Doc. 12-6* at 2), and at the reconsideration level on April 1, 2013 (*id.* at 9). On April 19, 2013, Plaintiff requested a hearing to review the denial of his application. *Id.* at 14. Administrative Law Judge Barry O'Melinn (hereinafter "ALJ") conducted a hearing on April 23, 2014. [*Doc. 12-4* at 2-30]. Plaintiff appeared, unrepresented, and testified (*id.* at 8-16), as did his mother, Rosella Monte Baca (*id.* at 16-19), and his father, Franklin Baca (*id.* at 19-22). Vocational Expert Nicole King (hereinafter "VE") also appeared and testified (*id.* at 26-29).

On August 28, 2014, the ALJ issued a decision (*Doc. 12-3* at 21-28) finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled from the date his application was filed (*id.* at 21). Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 15. On January 27, 2016, the Appeals Council entered an order indicating it had received additional evidence[1] from Plaintiff, which it made a part of the record. *Id.* at 6. On January 27, 2016, the Appeals Council denied Plaintiff's request for review on the ground that there was "no reason under our rules to review the [ALJ]'s decision." *Id.* at 2. The Appeals Council indicated that it had "considered" the additional evidence, and found that "this information does not provide

---

[1] The additional evidence consisted of medical records, for the period from February 27, 2014 to September 25, 2014, from Alamo Navajo Health Center (*Doc. 12-19* at 34-41); and medical assessments of ability to do work-related activities, physical (*id.* at 44) and non-physical (*id.* at 45), both dated September 26, 2014, from Wren T. Kennedy, CRNP (*id.* at 45).

a basis for changing the [ALJ]'s decision." *Id*. at 3. This decision was the final decision of the Commissioner. On March 25, 2016, Plaintiff filed his complaint in this case. [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005)

(citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III.   Applicable Law and Sequential Evaluation Process

For purposes of SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (hereinafter "SEP") has been established for evaluating a disability claim. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his or her residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV. Plaintiff's Age, Education, Work Experience,and Medical History; and the ALJ's Decision

Plaintiff was born on April 25, 1994 and was 18 years old on July 12, 2012, the date he filed his disability application. [*Doc. 12-9* at 16]. Thus, for the purposes of his disability claim, Plaintiff is considered to be a "younger person."[2] In his application, Plaintiff claimed to be disabled due to having broken both legs at the ankle, broken his kneecap, and asthma. *Id*. at 20. Plaintiff completed high school with a diploma (*Doc. 12-4* at 11), and reads, writes, and understands English (*Doc. 12-9* at 19). At the hearing, Plaintiff testified that he weighed 420 pounds (*Doc. 12-4* at 13), and that he lives with his parents (*id*. at 8-9).

Plaintiff's medical records include: knee MRI reports dated July 11, 2012 (*Doc. 12-12* at 6-8) and March 18, 2013 (*Doc. 12-19* at 13-14) by Carlos Mena, M.D.; operative report dated September 10, 2012 by Douglas C. Allen, M.D. (*Doc. 12-12* at 9-11); treatment records for the period from July 19, 2011 to January 10, 2013 (*id*. at 12 through *Doc. 12-13* at 3), and dated May 28, 2013 (*Doc. 12-19* at 16-17), from New Mexico Orthopaedics; emergency and physical therapy records for the period from July 14, 2011 to January 31, 2013 (*Doc. 12-14* at 6 through *Doc. 12-18* at 39), and treatment records for the period from February 27, 2014 to March 17, 2014 (*Doc. 12-19* at 18-33) from Alamo Navajo Health Center. Additional records, consisting of treatment records for the period from February 27, 2014 to September 25, 2014 (*id*. at 34-41) from Alamo Navajo Health Center, and medical assessments dated September 26, 2014 (*id*. at 44-45) from Wren T. Kennedy, CRNP, were submitted to the Appeals Council sometime between

---

[2] *See* 20 C.F.R. § 404.1563(c) (defining a "younger person" as "under age 50").

September 26, 2014, when the last such document was created, and January 27, 2016, when the documents were made part of the record (*see Doc. 12-3* at 6). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the filing of his disability application on July 12, 2012. [*Doc. 12-3* at 23]. At step two, the ALJ found that Plaintiff has the following severe impairments: "obesity, knee disorder, asthma, hypertension, and chronic edema." *Id*. At the third step, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926)." *Id.* In reaching his conclusion, the ALJ considered Listings 1.02 (Major Dysfunction of Joints), 3.03 (Asthma), and 4.00(H)(1) (Evaluating Hypertension), as well as Soc. Sec. Rep. 02-1p (Obesity). *Id*. Before step four, the ALJ found that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 416.967(a) except occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, occasionally balance with a hand held assistive device, occasionally stoop, kneel, crouch, and crawl, should avoid concentrated exposure to extreme cold, extreme heat, pulmonary irritants such as fumes, odors, dusts, gases, poorly ventilated areas, moving hazardous machinery, and unprotected heights, and can understand remember and carry out simple instructions and make commensurate work related decisions, respond appropriately to supervision, coworkers and work situations, deal with routine changes in a work setting, maintain concentration, persistence and pace for up to and including two hours at a time with normal breaks throughout the work day.

*Id*. at 24. In support of this RFC assessment, the ALJ stated that "[Plaintiff] and his witnesses were generally credible. However, when taken in combination with the objective medical evidence, the record supports the conclusions [sic] that [he] can work within I [sic] the limits I have fashioned herein." *Id*. at 25.

At step four, the ALJ found that Plaintiff had no past relevant work. *Id.* at 26. At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform. *Id.* at 27. In support of this finding, the ALJ relied on the VE's testimony that an individual of Plaintiff's age, with the same education, work experience, and RFC, could perform representative jobs such as document preparer (DOT[3] 249.587-018), with 2,500,000 jobs nationally; final assembler (DOT 713.687-018), with 235,000 jobs nationally; and table worker (DOT 739.687-182), with 430,000 jobs nationally. *Id.* All three of these representative jobs have a designated SVP[4] rating of 2. The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act "since July 12, 2012, the date the application was filed." *Id.*

## V. Analysis

Plaintiff argues in his motion that: (1) the Appeals Council improperly rejected evidence that he submitted after the ALJ hearing (hereinafter "additional evidence") (*Doc. 17* at 14-17); and (2) the ALJ's step five finding is not supported by substantial evidence, because: (a) the VE's testimony regarding jobs numbers "is not reliable" (*id.* at 18-22); and (b) there is a conflict between Plaintiff's RFC and the job of "document preparer" that the ALJ failed to resolve (*id.* at 22-23). In response, Defendant argues that: (1) the additional evidence does not satisfy the

---

[3] DOT stands for Dictionary of Occupational Titles, which is available at http://www.occupationalinfo.org/ (site last visited April 11, 2017).

[4] SVP stands for Specific Vocational Preparation, which is a rating of the amount of time it takes "a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." POMS-DI-25001.00-B-79, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b79 (site last visited April 11, 2017). SVP level 2 jobs require "[a]nything beyond [a] short demonstration up to and including one month" of such preparation. *Id.* A job with an SVP rating of 1 or 2 is considered "unskilled work." POMS-DI-25001.00-B-88, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b88 (site last visited April 11, 2017).

7

three requirements for remand that it be "new, material, and chronologically relevant" (*Doc. 21* at 8-10); and (2) the VE's testimony provided the ALJ with "substantial evidence," upon which he could rely (*id*. at 11-17). In his reply, Plaintiff contends that "the Appeals Council accepted this [additional] evidence as new and material," but failed to analyze it, thereby leaving the Court with "no reviewable discussion of" the additional evidence (*Doc. 24* at 2-4), and reiterates his arguments regarding the VE's testimony (*id*. at 4-8).

## A.  The Appeals Council's Consideration of Additional Evidence

Plaintiff argues that this case should be remanded to the agency because the Appeals Council failed to evaluate seven pages of medical records, detailing two visits by Plaintiff to Wren T. Kennedy, CRNP at Alamo Navajo Health Center (hereinafter "Alamo Health"), on February 27, 2014[5] and September 25, 2014 (*Doc. 12-19* at 34-41), and assessments of Plaintiff's ability to do physical and non-physical work-related activities, dated September 26, 2014, which were also provided by Ms. Kennedy (*id.* at 45-46). Under the regulations in effect at the time of the Appeals Council's decision, "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470(b) (1987). Thus, the Appeals Council will only consider additional evidence that is "new, material, and chronologically

---

[5] Since this visit took place prior to the ALJ's April 23, 2014 hearing, it probably should have been offered with an explanation as to why it was not submitted to the ALJ. Under the amended version of 20 C.F.R. § 416.1470(b) (2017), which took effect on January 17, 2017, the Appeals Council will now only consider new evidence if "good cause" is shown for failure to inform the agency about it or to submit the evidence earlier. However, it appears that Plaintiff, who was unrepresented at the time, submitted the medical records for the ALJ hearing on April 5, 2014. *See* [*Doc. 12-19* at 18-33]. One of those records (*id.* at 21), which is signed by Anna Yourstone, RN, indicates administration of Toradol to Plaintiff, by injection, on February 27, 2014. However, Ms. Kennedy's February 27, 2014 notes were apparently not included.

8

pertinent." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). In this case, the Appeals Council indicated that it had "considered" the additional evidence and "found that this information does not provide a basis for changing the [ALJ]'s decision." [*Doc. 12-3* at 3]. This is a legal determination, which is reviewable by this Court *de novo*. *Threet*, 353 F.3d at 1191.

Plaintiff does not even argue that the additional evidence satisfies the *Threet* criteria for consideration of such evidence. Instead, Plaintiff contends that the Appeals Council failed to evaluate the evidence and thereby left this Court without a decision to review. [*Doc. 17* at 14-17]. The Court disagrees with Plaintiff's assertion that the Appeals Council "failed to evaluate" the evidence, since it clearly indicated that it had, and courts generally "take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Nonetheless, since the elements of newness, materiality, and temporal relevance are considered by the courts *de novo*, whether the Appeals Council did or did not "evaluate" the evidence has no bearing on this Court's determination of those factors.[6] As such, it is unfortunate that Plaintiff opted not to specifically address the *Threet* factors.

Evidence is "new" if it is "not duplicative or cumulative of evidence already of record." 42 U.S.C. § 405(g). New evidence is considered to be "material" if it might reasonably have led the agency to make a different decision. *Mays v. Colvin*, 739 F.3d 569, 573 (10th Cir. 2014). It is "temporally relevant" if it "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1570(b) (1987). Defendant argues that

---

[6] For the same reason, irrelevancy, the Court declines to address Plaintiff's assertion that the Appeals Council "accepted [the additional] evidence as new and material." [*Doc. 17* at 15].

9

Ms. Kennedy's notes from February and September 2014 "did not show a significant decline in [Plaintiff]'s functioning and were consistent with the evidence of lower extremity impairments that the ALJ described in his decision." [*Doc. 21* at 10]. With respect to the medical assessment, Defendant claims that "Nurse Kennedy's restrictive [assessment] was out of proportion to the record as a whole." *Id*. The Court assumes these arguments address the newness and the materiality of the additional evidence.

Plaintiff has asserted that his weight of 400 pounds in February 2014 precluded him from having a previously-scheduled surgery on his right knee. [*Doc. 24* at 2]. However, the facts that Plaintiff weighed at least 400 pounds, had been instructed to lose weight, and his knee surgery had been delayed, were included in Plaintiff's testimony at the hearing (*Doc. 12-4* at 12-13),[7] rendering that information "cumulative" and, therefore, not "new" under 42 U.S.C. § 405(g). With respect to Defendant's claim that the additional evidence shows "no decline" in Plaintiff's functioning, the Court notes that, had such a decline been shown in the additional evidence, it would not likely relate to the period prior to the ALJ's decision and would, therefore, not be temporally relevant to Plaintiff's claim in this case, although it could, potentially, be used to support a new claim.

More significantly, however, Ms. Kennedy's opinion regarding Plaintiff's work-related abilities simply fails to convince the Court that the substantiality of the evidence supporting the ALJ's decision without them would be lessened in any way if they had been included. In other

---

[7] The ALJ himself included such facts in his decision, noting that Plaintiff's "surgery has been delayed due to [his] obesity and need to lose weight." [*Doc. 12-3* at 25].

words, as opposed to being "reasonably likely" to change the ALJ's decision, it is nearly inconceivable that the additional documents would have done so. First, the opinion is not from an "acceptable medical source" (*see* 20 C.F.R. § 416.902(a)), and the source apparently rendered her opinion after having had only four visits with Plaintiff.[8] Additionally, the ALJ based his decision largely on Plaintiff's own accounts of his activities and difficulties, along with medical records from Douglas C. Allen, M.D., a treating orthopedist, and concluded that Plaintiff's physical impairments, "in combination with [his] obesity reasonably support [Plaintiff]'s allegations of bilateral knee pain causing functional limitations *when using his legs*." [*Doc. 12-3* at 25] (emphasis added). Because of this, the ALJ restricted Plaintiff to "sedentary" work, with additional restrictions, including occasional balancing "with a hand held assistive device." *Id.* at 24.

Finally, Ms. Kennedy's treatment notes fall short of establishing that Plaintiff's RFC should be more restrictive than that assigned him by the ALJ. The first record of contact between Plaintiff and Ms. Kennedy is dated February 27, 2014. [*Doc. 12-19* at 34-36]. On that date, Plaintiff's "chief complaint" was "[r]ight posterior popliteal[9] pain." *Id.* at 34. Ms. Kennedy

---

[8] There are treatment notes by Ms. Kennedy in the record that document visits with Plaintiff on February 27, 2014 (*Doc. 12-19* at 34-36), March 5, 2014 (*id.* at 21-25), March 17, 2014 (*id.* at 26-29), and September 25, 2014 (*id.* at 38-41). Of these, only the September 2014 notes record a visit that occurred after either the ALJ's hearing or his decision, and only the February and September notes were submitted as additional documents. Although the February notes preceded the ALJ hearing, they were not made part of the record until the Appeals Council's order on January 27, 2016. [*Doc. 12-3* at 6]. In submitting them, Plaintiff gave no explanation for the failure to provide them earlier. In any event, the Court discusses the March 2014 notes here only to give the additional evidence (which begins at *Doc. 12-19* at 34) context.

[9] "Popliteal" refers to the back of the knee. http://www.medicinenet.com/script/main/art.asp?articlekey=4999 (site last visited April 11, 2017).

noted that Plaintiff had been "kneeling down playing with his dogs" and, upon standing, felt a sharp pain in the back of his right knee. *Id*. Plaintiff was transported by ambulance to Alamo Health. *Id*. Ms. Kennedy's notes provide that:

> Here [Plaintiff] is complaining of severe right popliteal pain. He was issued a hinged knee brace by his orthopedic specialist last year but "wore it out" and did not request another. A replacement was given to him today and, following a dose of [intra-muscular] Toradol, he was eventually able to extend his knee; he reported that at one point while he was flexing and extending the knee he felt a "pop." Subsequently plain films of the knee were obtained and showed no acute damage including patellar dislocation. He was then discharged home with crutches and the new knee brace, with instructions to return to clinic next week for nutritional counseling, [physical therapy], and further follow up with orthopedics.

*Id*. Despite the x-rays having shown "no acute damage including patellar[10] dislocation," Ms. Kennedy assessed Plaintiff with a dislocated kneecap, noting that he had "marked limitations in active and passive [range of motion] due to pain." *Id*. at 35.

Ms. Kennedy again saw Plaintiff on March 5, 2014[11] in follow-up to his visit the previous week "for right popliteal pain attributable to his massive weight." *Id*. at 23. On examination, Ms. Kennedy indicated that Plaintiff "walks with a limp [due to] previous bilateral knee and ankle injuries, exacerbated by morbid obesity." *Id*. at 25. Her "plan" for Plaintiff was to get nutritional, behavioral, and physical therapy consultations. *Id*. There is no indication of any pain-related intervention at that visit. On March 17, 2014, Ms. Kennedy again saw Plaintiff, this

---

[10] The patella is also known as the kneecap. http://www.medicinenet.com/script/main/art.asp?articlekey=4795 (site last visited April 11, 2017).

[11] This record, as well as the next, from March 17, 2014, were both provided to the ALJ and, thus, are not part of the additional evidence, which begins at *Doc. 12-19* at 34. The Court discusses them here only to put the additional evidence in context.

time for "nasal congestion that rapidly progressed to a sore throat, cough, and body aches." *Id*. at 26. Again, no mention was made of knee pain or gait at this visit.

Finally, Ms. Kennedy saw Plaintiff on September 25, 2014 "for a physical examination and for provider completion of an application for SSI." *Id*. at 38. Her notes indicate that Plaintiff "has joint disease in both knees but cannot undergo corrective surgery because his current weight would make rehabilitation impossible. He has chronic knee pain which causes difficulty with ambulation." *Id*. She noted he had been referred for counseling about diet and exercise. *Id*. Plaintiff wore a brace on his right knee, and walked "with a marked limp. He also uses a cane to minimize weight bearing on the right knee and to help prevent falls." *Id*. Under "Review of Symptoms," Ms. Kennedy noted "All Others Negative." *Id*. at 39. In her physical examination notes, Ms. Kennedy indicated that Plaintiff was "morbidly obese; otherwise does not appear acutely ill," and that he had "normal gait, able to stand without difficulty." *Id*. at 39-40. Ms. Kennedy assessed Plaintiff with "Morbid Obesity" only, discontinued all of his medications, and indicated that he should "Call or Return if symptoms worsen or persist." *Id*. at 40-41. Ms. Kennedy's medical assessments (*id*. at 44-45), which both bear the name "Absalon Gutierrez, MD" as the "Treating/Examining Source," contain several statements directing the reader to "see attached notes." *Id*. No notes appear to have been attached, however, unless they are Ms. Kennedy's February 27 and September 25 treatment notes, which have already been discussed.

Although Ms. Kennedy's assessments are somewhat more restrictive than the ALJ's RFC, her opinion is more similar to the ALJ's RFC than it is different. For example, the ALJ determined that Plaintiff could perform a modified range of sedentary work. [*Doc. 12-3* at 24]. Sedentary work involves "[e]xerting up to 10 pounds of force occasionally" (which is up to

one-third of the time) and "a negligible amount of force frequently" (one-third to two-thirds of the time). *See* Dictionary of Occupational Titles, Appendix C (hereinafter "DOT, App'x C"), § IV.[12] Ms. Kennedy indicated, "by patient report," that Plaintiff can lift "less than 10 pounds" occasionally, and "less than 5 pounds" frequently, on a check-box form where the only options were "less than 5 pounds, less than 10 pounds and less than 20 pounds." [*Doc 12-19* at 44]. Similarly, Ms. Kennedy indicated that Plaintiff can stand and/or walk for "less than 2 hours," where the only options were "less than 2 hours, at least 2 hours, and about 6 hours." *Id*. Sedentary work, by definition, "involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally." DOT App'x C, § IV. One difference between the ALJ's RFC and Ms. Kennedy's assessment is that Ms. Kennedy indicated that Plaintiff should "never" kneel, stoop, crouch, or crawl (*Doc. 12-19* at 44), while the ALJ determined that he could perform those functions "occasionally" (*Doc. 12-3* at 24). In addition, Ms. Kennedy indicated that Plaintiff had only "slight" limitations with all of the presented "non-physical work activities," with the exception of "maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently (*i.e.*, 2-hour segments)" and "complete a normal workday and workweek without interruptions from pain[-] or fatigue[-]based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods." [*Doc. 12-19* at 45] Ms. Kennedy indicated that Plaintiff had "marked" limitations in performing those functions. *Id*.

---

[12] This reference is available at http://www.occupationalinfo.org/appendxc_1.html#STRENGTH (site last visited April 11, 2017). Job classifications for purposes of SSI claims "have the same meaning as they have in the [DOT]." 20 C.F.R. § 916.967.

14

Ms. Kennedy commented "please see attached notes" regarding these assessments, as well. However, nothing in Ms. Kennedy's notes actually supports the indicated marked deficits. Of particular note, there are essentially no records indicating that Plaintiff took any prescription pain medications, or that he regularly took any non-prescription pain relievers. Moreover, Plaintiff apparently had no need to continue seeing Ms. Kennedy, except on an as-needed basis, and he had been directed to exercise in order to lose weight.

Thus, a treating medical provider, who is not an acceptable source and had limited contact with the Plaintiff, rendered assessments that, to a great extent, do not materially differ from the ALJ's RFC and, to the extent they do, do not appear to be supported by the source's own treatment records. Such evidence simply is not "reasonably likely" to have led the agency to make a different decision, and is therefore not "material," as a matter of law. This claim is therefore without merit and will be denied.

### B. The ALJ's Step Five Analysis

Plaintiff asserts two grounds for reversal of the ALJ's finding, at step five of the SEP, that there are sufficient numbers of jobs in the national economy that Plaintiff can perform. Plaintiff's first argument is that the ALJ erred by relying on the VE's testimony regarding job numbers, as that testimony is "not reliable." [*Doc. 17* at 18]. Secondly, Plaintiff contends that one of the three jobs given by the VE as representative of a job Plaintiff retains the capacity to perform, *i.e.*, document preparer, requires a higher level of reasoning ability than Plaintiff's RFC allows. *Id.* at 22-23. Defendant responds that Plaintiff "wrongly suggests that the document preparer job was inconsistent with unskilled work and misconstrues the job numbers provided by the [VE]." [*Doc. 21* at 11].

### 1. VE's Testimony Regarding Job Numbers

The VE testified that, based on Plaintiff's age, education, and RFC, he could perform the jobs of document preparer, final assembler, and table worker. [*Doc. 12-4* at 28]. She further testified that there were the following numbers of these jobs in the national economy: document preparer, "in excess of 2.5 million"; final assembler, "in excess of 235,000"; and table worker, "in excess of 430,000."[13] *Id.* However, Plaintiff contends that the job numbers stated by the VE are "unreliable" because the numbers given actually relate to job categories, rather than specific jobs, and that those categories include jobs that Plaintiff cannot perform. [*Doc. 17* at 18-22]. He claims, therefore, that "[t]here is no way of reliably verifying the accuracy of the number of jobs available in the national economy for the [representative] occupations." *Id.* at 18. Based on this, Plaintiff argues that the ALJ's finding that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" is not supported by substantial evidence. *Id.* at 22. However, the Court declines to resolve this issue, as it depends on facts that were not developed at the ALJ hearing, but remands this case to the Commissioner for additional consideration of the numbers of jobs that Plaintiff can perform. In so ruling, the Court notes three factors that weigh in

---

[13] The Court notes that, if these figures are correct, they should be sufficient to support the ALJ's finding that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." [*Doc. 12-3* at 27]. *See, e.g., Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. January 29, 2016) (unpublished) ("we have held an ALJ's erroneous inclusion of some jobs to be harmless error where there remained a significant number of other jobs in the national economy. *See, e.g., Bainbridge v. Colvin*, 618 Fed. Appx. 384, 391-92 (10th Cir. 2015) (500,000 jobs); *Shockley v. Colvin*, 564 Fed. Appx. 935, 940-41 (10th Cir. 2014) (215,000 jobs); *Chrismon v. Colvin*, 531 Fed. Appx. 893, 899-900 (10th Cir.2013) (212,000 jobs); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir.2008) (152,000 jobs)"). The *Evans* court further indicated that, although there is no "bright line" number that is "significant," "the number appears to be somewhere between 100, the number of jobs in *Allen* [*v. Barnhart*, 357 F.3d 1140] that we refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs we have considered (in *Stokes* [*v. Astrue*, 274 F. App'x 675]) to be sufficient." *Evans*, 640 F. App'x at 736.

favor of remand in this case, which are that: (1) the ALJ bears the burden of proof on this step five issue (*Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)); (2) Plaintiff was unrepresented (*albeit* by choice) at the ALJ hearing (*Doc. 12-4* at 5-6); and (3) this case will also be remanded based on Plaintiff's argument that there is a conflict between his RFC and the job of document preparer (*see infra*).

### 2. Inconsistency of Document Preparer Job with Plaintiff's RFC

Plaintiff contends, as did the Plaintiff in *Hackett*, 395 F.3d 1168, that there is a conflict between the VE's testimony and the DOT (*Doc. 17* at 22-23). In *Hackett*, the plaintiff's RFC included a limitation to "simple and routine work tasks." *Id*. at 1171. Similarly, in the present case, Plaintiff's RFC limits him to understanding, remembering, and carrying out "simple instructions" and making "commensurate work related decisions." [*Doc. 12-3* at 24]. In *Hackett,* the VE selected the job of surveillance system monitor as a representative job the plaintiff in that case could perform. Surveillance system monitor has a reasoning rating[14] of 3. Likewise, the job of document preparer has a reasoning rating of 3, although both final assembler and table worker have reasoning ratings of 1. The *Hackett* court found that a "limitation [to simple and routine work tasks] seems inconsistent with the demands of level-three reasoning."

---

[14] The VE in this case did not testify regarding the reasoning levels of the representative jobs. However, that information is contained in the "trailer" to the job definitions in the DOT. Reasoning, Math, and Language are divisions of General Educational Development (GED), which is described at http://www.occupationalinfo.org/appendxc_1.html (site last visited April 11, 2017). A level 2 reasoning job requires employees to be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations," while level 3 reasoning jobs require the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." *Id*. As an example, the trailer to the DOT's description of "document preparer" is "GOE: 07.05.03 STRENGTH: S **GED: R3** M1 L2 SVP: 2 DLU: 86" (emphasis added), which indicates that it has a reasoning rating of 3.

*Id*. at 1176 (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) as "rejecting contention that a claimant limited to following only simple instructions could engage in the full range of sedentary work because many unskilled jobs in that category require reasoning levels of two or higher"). Concluding that "level-two reasoning appears more consistent with Plaintiff's RFC," the *Hackett* court reversed and remanded "to allow the ALJ to address the apparent conflict." *Id*.

*Hackett* was also the reason given in two other decisions from this District that also remanded for consideration of the conflict between a restriction to "simple" work and a representative job with a reasoning level of 3. *See Bier v. Colvin*, 15 F.Supp.3d 1143 (D. N.M. 2014) and *Holt v. Colvin*, CIV-14-0024 KBM (April 16, 2015) (unpublished). In *Bier*, the Commissioner asserted that the restrictions in that case were "not exactly the same," but failed to argue that the difference was "meaningful." *Bier*, 15 F.Supp.3d at 1148, n. 4. In this case, although an argument might have been made for distinguishing *Hackett*, it was not and, as the Commissioner has chosen not to assert such an argument, this Court will not do so on her behalf.[15] As was noted in *Bier*, *Hackett* "is binding precedent in this circuit." *Id*. at 1148. Therefore, the Court concludes that this argument has merit and that, on remand, the ALJ should not include the job of document preparer as a job that Plaintiff can perform unless Plaintiff's ability to perform a reasoning level 3 job is explained.

---

[15] Defendant argues, instead, that "the Tenth Circuit has since [*Hackett*] recognized that GED levels do not correspond with the mental requirements of jobs contained in the DOT," citing *Anderson v. Colvin,* 514 F. App'x 756 (10th Cir. April 4, 2013) (unpublished) and *Mounts v. Astrue,* 479 F. App'x 860 (10th Cir. May 9, 2012) (unpublished). [*Doc. 21* at 13]. However, neither of those cases, which are both unpublished, actually conflicts with the analysis in *Hackett.* They are, therefore, inapposite.

## VI. Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be affirmed on the issue of the Appeals Council's consideration of additional evidence, but reversed and remanded for further consideration of Plaintiff's ability to perform jobs that exist in significant numbers in the national economy.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum* (*Doc. 17*) is **GRANTED**, in part, and **DENIED**, in part, and the Commissioner's decision in this case is **REMANDED** for further proceedings in accordance with this decision. A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_Lourdes A. Martínez_
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**